# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DUSAN DRAGISICH,**

    **Plaintiff,**

 v.                            **Case No. 20-cv-1465**

**MICHAEL LAZARIS, *et al.*,**

    **Defendants.**

---

## ORDER

---

Plaintiff Dusan Dragisich, who was previously incarcerated and is representing himself, brings this lawsuit under 42 U.S.C. § 1983. Dragisich was allowed to proceed on excessive force claims against the defendants for roughly handcuffing him and for kneeling on his neck to restrain him, causing his neck to break. The defendants filed a motion for summary judgment. (ECF No. 139.) Dragisich filed a motion to rebut the defendants' motion for summary judgment. (ECF No. 146.) The motions are ready for a decision. For the reasons stated below, the court grants the defendants' motion for summary judgment and denies Dragisich's motion to rebut summary judgment.

## FACTS

The defendants, West Allis Police Officers Michael Lazaris and Matthew Jacobson, arrested Dragisich for domestic violence, though the date of the incident at

issue in this case is unclear. In his second amended complaint, which was screened by Judge J.P. Stadtmueller, the date of the incident is listed as January 21, 2018. (ECF No. 38-3 at 1; ECF No. 53 at 4.) The defendants, in their brief in support of their motion for summary judgment, assert that the actual date of the incident was December 20, 2017. (ECF No. 140 at 2.) Dragisich, ultimately, does not dispute this, noting that the proposed third amended complaint (which was rejected on other grounds) had the December date. So, while the operative amended complaint has the January 2018 date, the court will accept the date of the arrest as December 20, 2017.

At approximately 11:00 p.m. on December 20, 2017, Lazaris arrived at Dragisich's home because of a call about a domestic disturbance. (ECF No. 104-1, ¶ 6.) The parties do not dispute that Dragisich was intoxicated, though Dragisich asserts he was not so drunk that he does not recall the events of the evening. (*Id.*, ¶ 7; ECF No. 148 at 8.) It is also undisputed that Dragisich refused to comply with a breathalyzer test. (ECF No. 140-1, ¶ 7.)

Dragisich states that the defendants roughly handcuffed him, ignoring the fact that he had recently had surgery to address his carpal tunnel syndrome. (ECF No. 38-3 at 1.) The defendants state they were unaware that Dragisich had recently had surgery and note that there is nothing in Dragisich's medical records indicating such surgery. (ECF No. 140-1, ¶ 21.) Dragisich states that Exhibit #2, which he attached to his response materials, is a medical record dated January 18, 2018, which shows he had the surgery. (ECF No. 147-2.) However, the records provided by Dragisich relate to a nerve study and do not indicate that he recently had surgery. (*Id.*)

2

Dragisich also asserts that he told the officers he had had the surgery before they arrested him. (ECF No. 148 at 3.)

The defendants took Dragisich to the West Allis Police Department for booking, and he was placed in a holding cell. (ECF No. 140-1, ¶ 8.) While in the holding cell, it is undisputed that Dragisich tried to hang himself by wrapping his own underwear around his neck. (*Id.*, ¶ 9; ECF No. 147-2 at 10.) Dragisich states that he was experiencing a mental health crisis. (ECF No. 147-2 at 10.) As a result, the defendants escorted Dragisich to the Milwaukee County Mental Health Complex (MCMHC). (ECF No. 140-1, ¶ 10.) Dragisich does not dispute that he refused to cooperate or talk with doctors at MCMHC, and in fact, states that he informed the defendants he would be uncooperative with any attempts to medically evaluate him. (*Id.*, ¶ 11; ECF No. 148 at 8.) The doctors at MCMHC cleared Dragisich for transport to the Milwaukee County Criminal Justice Facility (CJF), but during booking at CJF, Dragisich refused to answer any health screening questions or allow his blood pressure or temperature to be taken. (ECF No. 140-1, ¶¶ 12-13.) CJF would not accept Dragisich without a medical evaluation, so the defendants took him to Aurora West Allis Medical Center to attempt to get medical clearance. (*Id.*, ¶ 14.) Dragisich again admits that he was adamantly refusing to cooperate with the attempts to medically evaluate him. (ECF No. 148 at 8.) The defendants assert that at Aurora, Dragisich flailed around in his hospital bed, "nearly headbutting a nurse, damaging the bed, attempting to kick officers and staff, and getting close to headbutting or biting the doctor." (ECF No. 140-1, ¶ 15.) Dragisich states that he was "squirming and thrashing

3

around because I was trying to breathe and get the officer off me." (ECF No. 148 at 4.) He also states he was having a panic attack. (*Id.*)

Lazaris admits to holding Dragisich's head down in order to stabilize him to get his blood pressure but denies that he knelt on his neck. (ECF No. 140-1, ¶ 16.) Dragisich asserts that Lazaris knelt on his neck to get him into four-point restraints and Lazaris did not recognize that he was having a panic attack and a mental health crisis. (ECF No. 148 at 8.) Dragisich also states that he persisted in thrashing about on the bed to get Lazaris off his neck. (ECF No. 147-2 at 14.) As a result of Lazaris's actions, Dragisich states that his neck was broken. (*Id.*) However, the medical records submitted by Dragisich state that he was suffering from degenerative disc disease prior to this incident and show no evidence of a broken neck. (*Id.* at 15-19.)

Dragisich continued to not cooperate with efforts to evaluate his physical health to the point where doctors decided that physicality of his resistance showed that he was healthy enough to be discharged and placed into custody. (ECF No. 140-1, ¶¶ 17-18.)

### SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if

4

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Dragisich claims the defendants violated his constitutional rights when they roughly handcuffed him and when Lazaris knelt on his neck to restrain him at Aurora. There is a question of whether the excessive force standard under the Fourth Amendment or Fourteenth Amendment applies. The United States Supreme Court stated courts "need not address whether the Fourth or Fourteenth Amendment provides the proper basis for a claim of excessive force against a pretrial detainee

5

[who has not yet had a probable cause hearing]. Whatever the source of law, in analyzing an excessive force claim, a court must determine whether the force was objectively unreasonable in light of the 'facts and circumstances of each particular case.'" *Lombardo v. City of St. Louis*, 594 U.S. 464, 467 n.2, (2021) (*per curiam*) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397, (2015); (quoting *Graham v. Conner*, 490 U.S. 386, 396, (1989). The Seventh Circuit Court of Appeals elaborated that courts should "look to both *Kingsley* and *Graham* as [they] evaluate whether the use of force here was objectively reasonable, with an emphasis on the *Kingsley* factors as those are, at least semantically, a better fit for a pretrial detainee." *Raddant v. Douglas Cnty., WI*, 170 F.4th 583, 590 (7th Cir. 2026).

Under *Kingsley's* standard, "whether a defendant used excessive force is an objective, not a subjective, determination, and "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. Whether the force was objectively unreasonable turns on the "facts and circumstances of each particular case." *Id.* at 397. "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* To determine whether the force is reasonable courts should consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat

6

reasonably perceived by the officer, and whether the plaintiff was actively resisting." *Id.*

Here, when taking the facts in a light most favorable to Dragisich, which the court is required to do, no reasonable factfinder could conclude that the defendants used excessive force against him. With regard to the handcuffing, all Dragisich asserts is that he was roughly handcuffed. He does not explain when and where he was roughly handcuffed, nor does he specify who exactly handcuffed him or how. At most, he states that he told the defendants he had recently had surgery for carpal tunnel syndrome, but he does not provide any evidence that he was injured as a result of the handcuffing or any details about the pain he allegedly suffered and whether he told the defendants he was in pain. *See Robbins v. Lappin*, 170 Fed App'x 962, 964 (7th Cir. 2006) (holding that a plaintiff did not suffer a constitutional violation when the officer allegedly handcuffed him while his wrists were broken because he did not demonstrate the officers knew about his pain). In short, Dragisich does not provide enough details regarding the use of handcuffs to overcome summary judgment. "Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)).

7

As to Lazaris allegedly kneeling on Dragisich's neck, assuming that Lazaris actually did so, no reasonable factfinder could find that method of restraint was unreasonable. It is undisputed that Dragisich was heavily intoxicated. And, by Dragisich's own admission, he was adamantly refusing medical care and was actively uncooperative. He admits to thrashing around in an attempt to prevent the medical staff from evaluating him. Dragisich also states that he was experiencing a mental health crisis and a panic attack, which includes the extreme emotional and physical reactions that accompany such experiences. Additionally, Dragisich offers no evidence that his neck was broken or he was otherwise injured by Lararis. The medical records Dragisich offers do not demonstrate that he broke his neck or was otherwise injured as a result of the encounter; instead, they describe a degenerative disc disease that Dragisich had been suffering from for a while. In short, the level of Dragisich's resistance, the lack of injury, and the physical threat Dragisich was posing to the defendants and hospital staff warranted the use of force.

Dragisich argues that he had a constitutional right to decline medical care, but that does not excuse his active resistance to the defendants' attempts to obtain a medical evaluation. Whether the defendants violated Dragisich's constitutional rights by forcing him to undergo a medical evaluation is an issue that Dragisich was not allowed to proceed on at screening, and the court will not evaluate it. *See Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013) (A plaintiff is limited to the scope of the screening order).

8

Because no reasonable factfinder could conclude that the defendants used excessive force against Dragisich, summary judgment is granted in their favor.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment and denies Dragisich's motion to rebut the defendants' motion for summary judgment. The defendants also argued that they were entitled to qualified immunity and requested the court dismiss the case for failure to prosecute, but because the court decided the case in their favor on the merits, it does not have to address those arguments. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 139) is **GRANTED**.

**IT IS FURTHER ORDERED** that Dragisich's motion to rebut the defendants' motion for summary judgment (ECF No. 146) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely

9

requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 17th day of June, 2026.

STEPHEN DRIES
United States Magistrate Judge

10